IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:11CR434 |
| --- | --- | --- |
| | ) | (Civil Case No. 4:14CV863) |
| Plaintiff, | ) | |
| | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | |
| | ) | |
| DWAYNE L. PEACE, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO PETITIONER'S |
| Defendant. | ) | MOTION TO VACATE, SET ASIDE OR |
| | ) | CORRECT SENTENCE |

The Respondent, United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney, and Linda H. Barr, Assistant United States Attorney, hereby opposes Peace's Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. Peace's petition presents claims of ineffective assistance of counsel. As set forth below, this motion is without merit and should be denied.

## STATEMENT OF THE CASE

On September 21, 2011, a federal grand jury, in the Northern District of Ohio, returned an indictment charging Dwayne L. Peace with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1); and distribution of 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, a violation of 21 U.S.C. § 841(a)(1)(B) (Count 2). (Docket #1). Peace was arrested on October 25, 2011, and waived his detention hearing on that same date. (Docket #3). On April 4, 2012, the United States filed an Information to establish prior conviction. (Docket #11). On October 16, 2012, Peace consented to an order of referral to a Magistrate Judge for purposes of receiving a plea of guilty. (Docket #16). On that same date, Peace entered a change of plea pursuant to a written plea agreement to Count 1 of the Indictment. (Docket #15). A Report and Recommendation was issued by the Magistrate Judge on October 16, 2012. (Docket #17). No objections were taken to the R&R. The District Court, Judge Lesley Wells, accepted Peace's plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure on February 5, 2013. On May 31, 2013, Judge James G. Carr sentenced Peace to the agreed upon sentence of 216 months custody, five years of supervised release and a $100 special assessment. Count 2 of the Indictment, per the plea agreement, was dismissed. (Docket #35). On April 21, 2014, Peace filed the instant Motion to Vacate Under 28 U.S.C. § 2255. On May 27, 2014, Peace was granted an extension of time to file affidavits, however, no affidavits have been filed by Peace to date.

## STATEMENT OF THE FACTS

The relevant facts for purposes of this Response are summarized in the Factual Basis of the written plea agreement executed by Peace, his attorney and the United States on October 16, 2012. These facts are as follows:

On July 27, 2010, a confidential source (hereinafter CS) acting on behalf of the Drug Enforcement Administration (DEA) met with Defendant in Youngstown, Ohio and purchased approximately two ounces of cocaine base (crack) from Defendant for $2,200 in official funds.

The CS was fitted with electronic monitoring/recording equipment as well as a tracking device enabling agents to monitor the CS's location and conversation.

As a result of this crack cocaine purchase as well as an investigation conducted by the DEA and local law enforcement agencies of Defendant since 2005, Defendant was stopped on August 5, 2010 by DEA. During that traffic stop, Defendant told DEA agents he was trying to quit selling drugs and agreed to go to the DEA office to talk with agents about drug trafficking in the Youngstown, Ohio area.

On August 9, 2010, Defendant spoke to DEA agents again. He was advised that he was free to leave at any time and that he was not under arrest. Defendant discussed his drug sources and customers for cocaine and crack cocaine. Defendant stated that starting in 2005 he began getting 20 kilograms of cocaine per week from sources. In turn, he would distribute these kilograms of cocaine to various individuals in the Youngstown, Ohio area. At times, though, over the years the number of kilograms he purchased and sold decreased due to competition.

The amount of drugs possessed and distributed by Defendant during the course of the conspiracy and/or directly attributable to Defendant's actions and reasonably foreseeable within the conspiracy was at least 50 kilograms, but less than 150 kilograms of cocaine. Defendant knew that the substance Defendant was possessing and distributing was actually cocaine.

## **LAW AND ARGUMENT**

In his 2255 motion, Peace has raised three separate allegations of ineffective assistance of counsel: (1) that counsel failed to file an appeal; (2) that statements which agents allegedly assured him would not be used against him were part of the basis for the plea agreement and that his counsel failed to file a motion to suppress those statements; and (3) that his counsel failed to investigate and challenge his status as a Career Offender.

Title 28, United States Code, Section 2255, sets forth the four grounds upon which a federal prisoner may base a claim for relief: "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'" Hill v. United States, 368 U.S. 424, 426-27 (1962). To prevail on a Section 2255 motion, the petitioner must prove by a preponderance of the evidence that his constitutional rights were denied or infringed. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

It is well settled that a proper 2255 motion does not reach alleged errors that are not of a constitutional or jurisdictional magnitude and that could have been reach by a direct appeal. Stone v. Powell, 428 U.S. 465, 477 (1976). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted." Id. at 164.

A defendant seeking to establish ineffective assistance of counsel must satisfy the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), where the Supreme Court formulated the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that render the result unreliable.

Id. at 687.

In attempting to establish that any attorney's performance is deficient, a defendant "must show that counsel's representations fell below an objective standard of reasonableness." Id. at 687-688. The performance inquiry must consider the prevailing circumstances at the time of trial and should not be conducted in a vacuum. Id. at 688.

Judicial scrutiny of counsel's performance "must be highly deferential." Id. at 689. A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Indeed, the Sixth Circuit has recognized the necessity of affording defense counsel wide latitude in making trial decisions. "Counsel must exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." Lewis v. Alexander, 11 F.3d 1249, 1353-54 (6th Cir. 1993).

Further, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered should trial strategy.'" Strickland, 466 U.S. 689 (citations omitted). The reviewing court is also required to recognize that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

I. **THE FAILURE TO FILE AN APPEAL WHEN INSTRUCTED DOES NOT AMOUNT TO INEFFECTIVE ASSISTANCE OF COUNSEL.**

Petitioner contends he did not receive effective assistance of counsel when he instructed his representing attorney to file an appeal of his sentence. While it is not possible to conclude how a district court will rule without access to privileged communications between Peace and his

5

attorney, the failure to file an appeal when instructed to do so does not always indicate ineffective assistance of counsel. Beyond this, the plea agreement reduced the scope of Peace's appealable issues. As a result, the failure to file an appeal when instructed to do so in the instant matter is not ineffective assistance of counsel.

In order to prevail on a § 2255 claim, the petitioner must show both: 1) deficient performance of counsel and 2) that performance resulted in prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). There exists a duty to file an appeal if requested to do so. Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998). Generally, a petitioner "would need to demonstrate either (1) that the attorney disregarded his instructions to file a notice of appeal, or (2) that the attorney failed to consult with him about an appeal when counsel knew or would have known that he might want to appeal." Thompson v. United States, 42 Fed. Appx. 766, 767-68 (6th Cir. 2002) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000)). This strict duty is modified by the language of Roe v. Flores-Ortega. The Supreme Court has stated that this duty arises whenever a "rational defendant" would want to appeal, citing the example of "nonfrivolous grounds." 528 U.S. at 480. In a § 2255 proceeding, the "focus . . . is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." Tollett v. Henderson, 411 U.S. 258, 266 (1973).

A case similarly situated to the instant matter is Thompson v. United States, 42 Fed. Appx. 766, 767-68 (6th Cir. 2002). In Thompson, the petitioner claimed that he received ineffective assistance of counsel because his attorney did not appeal as instructed, that the attorney coached him out of entering a motion to suppress evidence, and coached him into an unfavorable plea bargain. The court held that each of these claims was without merit. Id. at 769.

6

First, the court recognized that Thompson "pleaded guilty pursuant to a negotiated plea agreement, thereby reducing the scope of potentially appealable issues and indicating his desire to end judicial proceedings." Id. at 768. The district court found that this, in accompaniment with the delay in appeal, would not be indicative of a genuine wish to appeal; therefore, there was no interest in an appeal, and a duty of the counsel to appeal never arose. Id.

Second, the court found that the entering into a plea negotiation resulted in Thompson unconditionally waiving "any suppression of the evidence issue." Id. (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Pickett, 941 F.2d 411, 416 (6th Cir.1991)). The court further held that "Thompson cannot show any nonfrivolous grounds for appeal, he did not seek to file a belated appeal, and he waited an extraordinarily long time before asserting his right to appeal. Thus, there are no substantial reasons to believe that he would have appealed." Id. at 769.

Applying the rationale of the majority of federal circuits to the instant matter, it is apparent that a similar result should be reached. See generally United States v. Pickett, 941 F.2d 411, 416 (6th Cir. 1991) (citing separate precedents from different circuits regarding the foreclosure of appeals pursuant to a guilty plea). After a review of the plea agreement, it can be stated that Peace's plea agreement reduced the scope of appealable issues as well. The plea in the instant matter was found to be knowing, intelligent, and voluntary. (R. 17, Report and Recommendation at ¶ 4.) Peace agreed to the 216 month sentence, (R. 30, Plea Agreement at ¶ 13), which is greatly below the advisory range found by the United States Probation Officer based on a computation of a total Offense Level of 34 and Criminal History Category VI. (R. 32, Presentence Investigation Report Filed Under Seal.) Peace agreed to limit his appealable issues to § 2255 proceedings and a breach of the plea agreement. (R. 30, Plea Agreement at ¶

7

18.) As he was sentenced to 216 months, and fails to show any evidence of deficient performance on behalf of his attorney, neither of those conditions can be collaterally attacked. Since the plea agreement greatly reduced his ability to appeal, the duty to appeal never arose for Peace's counsel. The rationale of this duty would not be furthered by holding Peace's counsel to a strict duty when such an endeavor is plainly frivolous. Therefore, since the duty never arose, Peace's counsel could not have breached it. Peace's counsel did not perform deficiently.

## II. PETITIONER'S INTERROGATION AND PLEA BARGAINING CLAIMS ARE MERITLESS.

Peace claims that his Fourth and Fifth Amendment rights were infringed as a result of the proceedings against him. Specifically, Peace alleges that he was not Mirandized during an interview with law enforcement, that during that interview he was given immunity, and further, that the statements made by him during this interview were knowingly false. Peace contends his counsel performed deficiently by not attempting to suppress these statements. It is alleged that Peace's counsel was aware of the nature of the statements at the time he failed to suppress these statements. While it appears that Peace was not in custody during the time of this interview, that he was not offered immunity, and that the scope of appealable issues was reduced pursuant to a knowing and voluntary guilty plea, the legal safeguards of custodial interrogation are examined to address Peace's <u>Miranda</u> claim.

The admissibility of statements made during custodial interrogation is governed by the oft-cited precedent of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The <u>Miranda</u> decision gave rise to a line of cases that guide the admissibility of statements given while in custody. <u>See e.g.</u>, <u>Dickerson v. United States</u>, 530 U.S. 428 (2000). In order for <u>Miranda</u> protections to attach, the person must be in custody. <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994).

The first element to be determined in such instances is whether or not a person is in custody. The Supreme Court has stated:

> As used in our Miranda case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."

Howes v. Fields, 132 S. Ct. 1181 (2012) (internal citations omitted). Without question, the rationale behind this prong is to ensure that inculpatory statements are not tainted by any hint of coercion. Federal courts have examined factors such as the length of time of the interrogation, the nature of the room, whether or not there is a "formal arrest," and whether restraints are present in determining the nature of an interrogation. Id. However, such factors are not dispositive. See Berkemer v. McCarty, 468 U.S. 420 (1984) ("However, we decline to accord talismanic power to the phrase in the Miranda opinion emphasized by respondent," that the freedom-of-movement test mandates a finding of custody for Miranda purposes.)

Peace has not alleged any facts to support that the interview that took place between Peace and the agents was custodial in nature. According to the Plea Agreement, to which the Petitioner Peace affixed his initials and signature, the DEA agents stopped Peace on August 5, 2010 for a traffic stop, and met with him on August 9, 2010, where he was advised he was not under arrest and free to leave at any time. (R. 30, Plea Agreement, at ¶¶ 20b-20c.) In addition, prior to the recitation of the factual basis of the Plea Agreement, the document states the following:

> Defendant agrees that the following summary fairly and accurately sets forth Defendant's offense conduct and a factual basis for the guilty plea. Defendant further agrees that the facts set forth in the summary are true and could be established beyond a reasonable doubt if the case were to proceed to trial.

9

(Docket #15, p. 7).

The Sixth Circuit has held that where a federal agent advises a person of the noncustodial nature of the interview, and the circumstances of the interview are not contested, that a person is not in custody for the purposes of Miranda and 5th Amendment protections. See United States v. Salvo, 133 F.3d 943 (6th Cir. 1998); United States v. Macklin, 900 F.2d 948 (6th Cir. 1990).

In the instant matter, the record explicitly states that Peace gave statements to DEA agents on August 9, 2010. (R. 30, Plea Agreement, at ¶¶ 20b-20c.) He was advised of his freedom to leave, and he also was informed that he was not under arrest. (Id.) Therefore, as Peace does not allege facts that create doubt as to the noncustodial circumstances of the record, it cannot be said that Peace, or a reasonable person in Peace's position, could have reasonably believed that he was in custody.

However, "[e]ven if Miranda warnings are not required, a confession cannot be used if it is involuntary." Macklin, 900 F.2d at 951. In determining whether a confession or inculpatory statements were involuntarily given, a defendant must make some showing of coercion by the police or government actor. Id. As Peace has not alleged particular countervailing facts, the facts of the record stand as not contradicted. There is no factual dispute as to the context or environment of the interview.

Since Peace was not in custody, and voluntarily gave inculpatory statements to DEA agents, Miranda protections do not attach. As to Peace's claim that he was told by DEA agents that his statement would not be used against him, it was clear in the Plea Agreement that Peace's statement was a significant part of the factual basis. Again, Peace readily agreed to this factual basis and asserted its truth. In addition, he received the benefit of his bargain in receiving a

recommended sentence below the advisory range of the United States Sentencing Guidelines. Such a bald allegation cannot be a basis for a claim of ineffective assistance of counsel.

### III.  PETITIONER WAS APPROPRIATELY CLASSIFIED AS A CAREER OFFENDER.

Peace next claims that he did not receive effective assistance of counsel when his attorney allegedly failed to investigate the nature of his prior state convictions. Peace alleges that "but for" this deficient performance, he would not be classified as a "career offender." Peace misapplies and misconstrues the "career offender" terminology, and his sentence is proper under the United States Sentencing Guidelines.

U.S.S.G. § 4B1.1 states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Petitioner Peace is currently 39 years old, and was approximately 36 years old at the time of the commission of the current offense. (R. 32, Presentence Investigation Report Filed Under Seal, at PageID #132.) The first requirement is satisfied. A controlled substance offense is described in the guidelines as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). As 21 U.S.C. § 841(a) directly prohibits the conduct stated in the controlled substance offense definition of the Guidelines, and the penalties prescribed under § 841(b)(1)(A) mandate a minimum of 10 years imprisonment for the distribution of more than

11

five kilograms of cocaine (the conduct in the instant matter), the offense of which Peace was convicted is a controlled substance offense. Thus, the second requirement is satisfied.

The third requirement necessitates a more detailed level of analysis in order to make a determination. The probation officer listed three prior state convictions in the Presentence Report that qualify Peace as a career offender. (R. 32, Presentence Investigation, at PageID# 135-37.) In order to meet the third requirement, at least two of these convictions must fall within the confines of either a "crime of violence" or controlled substance offense. Two of these state felony convictions were for trafficking in cocaine (R.32, Presentence Report, at ¶¶ 45, 47), while the other state felony conviction was for attempted possession and preparation of cocaine for sale. (Id. at ¶ 42.) The only possible discrepancy Peace may be arguing on this issue is that none of the controlled substance convictions resulted in a sentence of imprisonment that exceeded one year. Since Petitioner Peace misapplies the mechanics of computing Criminal History, this argument is without merit.

Under the advisory guidelines, a prior controlled substance offense conviction is counted for the purposes of determining career offender status if the offense is "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(b). The qualifier of "punishable" has been interpreted by the Sixth Circuit to mean that the "actual sentence is not determinative; rather, it is potential exposure that determines whether a conviction qualifies as a prior felony conviction for career offender purposes." United States v. McGhee, 141 Fed. Appx. 441 (6th Cir. 2005); United States v. Parson, 288 F.3d 818, 821 n.1 (6th Cir. 2002) (noting the potential exposure to punishment, not actual sentence, as determinative); see also United States v. Alemnas, 553 F.3d 27, 31 (1st Cir. 2009).

The present questions are: 1) whether the three state felony convictions classified as controlled substance offenses fall within the allotted timeframe for calculating career offender status, and 2) if so, whether the convictions are punishable by a term of imprisonment exceeding one year. Under the Guidelines, the computation scheme under U.S.S.G. § 4A1.2 applies to computing Criminal History under U.S.S.G. § 4B1.1. See U.S.S.G. § 4B1.1, comment (n.3). Under § 4A1.2(e), "all sentences imposed within the ten years before the instant offense are counted. Sentences of 13 months or more are counted if they were imposed or resulted in incarceration at any time during the 15 years before the instant offense." Parson, 288 F.3d at 821 (analyzing the method to compute career offender status).

In the instant matter, Peace was arrested on October 25, 2011, having been indicted on these charges on September 21 of that year. (R. 32, Presentence Filed Under Seal at Page ID# 127.) However, the controlling date for the purpose of the "commencement of the offense" under § 4A1.2(e)(1) in charges of drug conspiracies (applicable in the instant matter) should be reflective of all relevant conduct. United States v. Ellerman, 411 F.3d 941, 947 (8th Cir. 2005) (quoting United States v. Kennedy, 32 F.3d 876, 890 (4th Cir. 1994) ("Relevant conduct includes 'all acts ... committed [or] aided ... by the defendant' and when a conspiracy is involved 'all reasonably foreseeable acts and omissions of others in furtherance of the [conspiracy]' that occurred 'in preparation for that offense.'"); see also United States v. Saikaly, 207 F.3d 363, 372 n. 10 (6th Cir. 2000)("[R] rather, the guidelines provide that the term 'commencement of the instant offense' includes any relevant conduct."). Acts committed prior to the "date identified by the indictment" are included. Ellerman, 411 F.3d at 947.

The Presentence Investigation Report identifies Peace's overt involvement in the present drug conspiracy as early as 2005. (R. 32 at ¶ 8.) Under the rationale of the above stated

13

precedent, the earliest that Peace can be implicated within the conspiracy is 2005. Therefore, any sentence imposed within the 10-year period preceding 2005 may be included in calculating the Criminal History score. This would encompass all of the three state felony convictions at issue. However, it should be noted that the Sixth Circuit remanded the case in Saikaly as the district court "failed to make a specific finding of the date that Saikaly entered the conspiracy, or commenced the instant offense." 207 F.3d at 372. In the instant matter, the district court accepted the plea agreement, which stated that Peace's conduct that constituted the instant offense began in 2005. (R. 30, Plea Agreement at ¶ 20a.)

Having found that the three prior state convictions are 1) controlled substance offenses that 2) have occurred within 10 years of the commencement of the instant offense charges, the last determination to be made is whether these convictions are punishable by terms of imprisonment exceeding one year. A docket search of Mahoning County Common Pleas court records did not indicate any docket for Case No. 03 CR 693 (R. 32, Presentence Investigation, at ¶ 45.) Even absent an analysis of this conviction in the instant matter, Peace is correctly computed to be a career offender.

In Case No. 99 CR 00322 in the Mahoning County Court of Common Pleas, Petitioner Peace was convicted of violating OHIO REV. CODE ANN. § 2925.07(A) after having pled guilty to this and other charges. Effective February 13, 2001, § 2925.07 was repealed pursuant to 2000 Ohio H.B. 528. The statute version under which Peace was sentenced was amended under 1998 Ohio H.B. 122. Under then § 2925.07(C)(4)(c):

> If the amount of the drug involved exceeds one of those amounts [(five grams of cocaine or one gram of crack cocaine)] and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, preparation of cocaine for sale is a felony of the third degree, and there is a presumption for a prison term for the offense.

14

As Peace received third-degree felony level during sentencing, and the docket in the case lists this specific statute in the sentencing entry, it is presumed under § 2929.14(A)(3)(b) that absent any limiting or enhancing factors, a maximum prison term of 36 months would be imposed. As 36 months exceeds 12 months, and the qualifying language within the advisory guidelines necessitates only a finding of "punishable" rather than "imposed," this conviction can be considered a predicate offense.

In Case No. 2006 CR 00077 in the Mahoning County Court of Common Pleas, Petitioner Peace was convicted of violating OHIO REV. CODE ANN. §2925.03(A)(2)(C)(4)(c) for trafficking in more than five but less than 10 grams of cocaine. (R. 32, Presentence Investigation, at ¶ 47.) This is a felony of the fourth degree. Under § 2929.14 of the Ohio Revised Code, a felony of the fourth degree is punishable by a term of imprisonment of up to 18 months. As 18 months exceeds 12 months, and the qualifying language within the advisory guidelines necessitates only a finding of "punishable" rather than "imposed," this conviction can be considered a predicate offense.

As a result, Peace was convicted of two state felony level controlled substance offenses punishable by term of imprisonment exceeding one year. Both of these convictions occurred within 10 years of the beginning of the current offense. Therefore, under the Sentencing Guidelines, Peace's classification as a career offender is correct.

## IV.   BASED ON THE PRECEDING, AN EVIDENTIARY HEARING IS NOT REQUIRED

Petitioner Peace next contends that all of the above events mandate an evidentiary hearing. Where the record conclusively shows that the petitioner is not entitled to relief, an evidentiary hearing is not required. Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). An evidentiary hearing is necessary only "where there is a factual dispute . . . to

determine the truth of petitioner's claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999) (internal citations omitted). When the allegations of a petitioner in a habeas proceeding "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts," an evidentiary hearing is not required. Engelen v. United States, 68 F.3d 238, 240 8th Cir. 1995). Only when the petitioner provides a factual narrative that is "neither contradicted by the record nor inherently incredible" should an evidentiary hearing be held. Huff v. United States, 734 F.3d 600, 607 (6th Cir. 2013) (internal citations omitted).

There are discrepancies between Peace's allegations and the record. However, these allegations are utterly unfounded. As Peace's allegations concerning grants of immunity and the actual events that transpired differ based on recorded factual events in the record, the allegations should be deemed refuted and inherently incredible. Conclusions or perceptions, not statements of actual fact, do not render an evidentiary hearing necessary. The unfounded perception, and an unreasonable one at that, that Peace was both in custody and granted immunity from prosecution cannot be said to warrant an evidentiary hearing simply because Peace was unable to fully grasp the legal concepts at bar.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By: /s/ *Linda H. Barr*
Linda H. Barr (PA: 0041079)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 44308
(330) 761-0521
(330) 375-5492 (facsimile)
Linda.Barr@usdoj.gov

16

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2014 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ *Linda H. Barr*
Linda H. Barr
Assistant U.S. Attorney