IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
DWAYNE L. PEACE,                                    :   CASE NO.  4:11 CR 434
                                                                  :                  4:14 CV 863
                          Petitioner            :
                                                                  :   MEMORANDUM OF OPINION AND
         -vs-                                               :   ORDER
                                                                  :
                                                                  :
UNITED STATES OF AMERICA,              :
                                                                  :
                          Respondent         :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Petitioner Dwayne L. Peace, proceeding *pro se*, seeks to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. Doc. 37. Mr. Peace maintains that his counsel was ineffective, on three separate grounds, for: (1) failing to file a direct appeal; (2) failing to file a motion to suppress statements that he made to agents after they allegedly assured him that the statements would not be used against him; and (3) failing to challenge Mr. Peace's status as a career offender. Docs. 37, 37-1. The government responded in opposition. Doc. 41. For the reasons set forth below, Mr. Peace's petition will be denied.

**I.  Background**

On 21 September 2011, Mr. Peace was named in both counts of a two-count Indictment for conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21

U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1); and distribution of 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, a violation of 21 U.S.C. § 841(a)(1)(B) (Count 2). Doc. 1. On 25 October 2011, Mr. Peace was arrested. On 4 April 2012, the government filed an Information, pursuant to 21 U.S.C. § 851, notifying Mr. Peace of its intent to seek an enhanced sentence under 21 U.S.C. § 841(b)(1)( C), predicated on Mr. Peace's prior felony drug trafficking conviction. Doc. 11. On 16 October 2012, Mr. Peace pleaded guilty to Count 1 of the indictment, pursuant to a plea agreement. Doc. 17. As stated in the parties' agreement, Mr. Peace agreed

> . . . that the following summary fairly and accurately sets forth Defendant's offense conduct and a factual basis for the guilty plea. Defendant further agrees that the facts set forth in the summary are true and could be established beyond a reasonable doubt if the case were to proceed to trial.
>
> A. On July 27, 2010, a confidential source (hereinafter CS) acting on behalf of the Drug Enforcement Administration (DEA) met with Defendant in Youngstown, Ohio and purchased approximately two ounces of cocaine base (crack) from Defendant for $2,200 in official funds. The CS was fitted with electronic monitoring/recording equipment as well as a tracking device enabling agents to monitor the CS's location and conversation.
>
> B. As a result of this crack cocaine purchase as well as an investigation conducted by the DEA and local law enforcement agencies of Defendant since 2005, Defendant was stopped on August 5, 2010 by DEA. During the traffic stop, Defendant told DEA agents he was trying to quit selling drugs and agreed to go to the DEA office to talk with agents about drug trafficking in the Youngstown, Ohio area.
>
> C. On August 9, 2010, Defendant spoke to DEA agents again. He was advised that he was free to leave at any time and that he was not under arrest. Defendant discussed his drug sources and customers for cocaine and crack cocaine. Defendant stated that starting in 2005 he began getting 20

2

>   kilograms of cocaine per week from sources. In turn, he would distribute these kilograms of cocaine to various individuals in the Youngstown, Ohio area. At times, though, over the years the number of kilograms he purchased and sold decreased due to competition.
>
>   21.    The amount of drugs possessed and distributed by Defendant during the course of the conspiracy and/or directly attributable to Defendant's actions and reasonably forseeable within the conspiracy was at least 50 kilograms, but less than 150 kilograms of cocaine. Defendant knew that the substance Defendant was possessing and distributing was actually cocaine.

Doc. 30.

It was further agreed that Mr. Peace was subject to a Base Offense Level of 36 and that with a Career Offender adjustment[1], pursuant to U.S.S.G. § 4B1.1, his Offense Level was 37. Doc. 30 at PageID#: 117. The government moved for a three-level downward adjustment for acceptance of responsibility, lowering the Offense Level to 34. Doc. 32 ¶ 5. Pursuant to § 4B1.1, Mr. Peace's Criminal History Category was VI, which placed him in a guideline range of 262 to 327 months according to the Presentence Report. Doc. 32 ¶ 91.

On 31 May 2013, Mr. Peace was sentenced to a term of 216 months custody (the sentence agreed upon in Petitioner's plea agreement), a five-year term of supervised release, and a special assessment of $100.00. Doc. 36.

On 21 April 2014, Mr. Peace filed the instant Motion to Vacate under 28 U.S.C. § 2255. The Court granted Mr. Peace an extension of time to file affidavits on 27 May 2014, but he has failed to so file. The motion is now ripe for decision.

---

[1] The Presentence Report identifies three prior state convictions that qualify Mr. Peace as a career offender. Two of the state felony convictions, in 2003 and 2007, were for trafficking in cocaine, and a 1999 felony conviction was for preparation of cocaine for sale. Doc. 32 ¶ 42, 45, 47.

3

## II. Law and Argument

A prisoner sentenced by a federal court may move that court to "vacate, set aside or correct the sentence" under 28 U.S.C. § 2255. To succeed on a § 2255 motion, a prisoner in custody must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." McPhearson v. United States, 675 F.3d 553, 559 (6th Cir. 2012) (internal quotation marks omitted).

"Claims of ineffective assistance of counsel are properly raised in a section 2255 motion." Huff v. United States, 734 F.3d 600, 606 (6th Cir. 2013). "To show a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In other words, the defendant must prove that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "Judicial scrutiny of counsel's performance must be highly deferential" and a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Even if counsel's performance fell below prevailing standards, relief can be granted only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Unless "both

4

showings" are made, it cannot be said that the sentence "resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. "An error by counsel at sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment." McPhearson, 675 F.3d at 563. Within the context of a guilty plea, the Sixth Circuit has noted:

> In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A defendant can meet this burden by showing, for example, that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at trial," id., or by showing that he or she was not competent to plead guilty, see Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir.2001); Eddmonds v. Peters, 93 F.3d 1307, 1317 (7th Cir.1996), cert. denied, 520 U.S. 1172, 117 S.Ct. 1441, 137 L.Ed.2d 548 (1997); Theriot v. Whitley, 18 F.3d 311, 313-14 (5th Cir.1994). A defendant is competent if he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him [or her]." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

Stewart v. Morgan, 232 F. App'x 482, 487 (6th Cir. 2007).

### A. Whether Counsel was Ineffective for Failing to File Direct Appeal

Mr. Peace argues that he instructed his counsel to file a direct appeal. His counsel did not, and Petitioner now contends that this demonstrates ineffective assistance of counsel. Counsel is required to file an appeal if so requested. Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998). Generally, a petitioner "would need to demonstrate either (1) that the attorney disregarded his instructions to file a notice of appeal, or (2) that the attorney failed to consult with him about an appeal when counsel knew or would have known that he might want to appeal." Thompson v. United States, 42 F. App'x 766, 767–68 (6th Cir. 2002). According to the Supreme Court, this duty

5

surfaces whenever a "rational defendant" would want to appeal, citing the example of "nonfrivolous grounds." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "Relevant factors in this inquiry are 1) whether the conviction follows a trial or a guilty plea; 2) whether the defendant received the sentence bargained for; and 3) whether the plea expressly reserved or waived some or all appeal rights." Thompson, 42 F. App'x at 768.

In the instant matter, Mr. Peace entered into a negotiated plea agreement, substantially limiting his appellate rights.  In Thompson, the Sixth Circuit held that the petitioner waived any suppression of the evidence issues by entering into an unconditional plea agreement, and he failed to demonstrate nonfrivolous grounds for appeal. Id. at 768. Similarly, Mr. Peace fails to allege any nonfrivolous grounds that would have triggered counsel's duty to file a notice of appeal.  He does not contest that his plea was knowing, voluntary, and intelligent.  The sentence he received was below the advisory range found by the U.S. Probation Office based on Petitioner's Offense Level of 34 and Criminal History Category of VI.  And, after the Court imposed sentence for Count 1, the government dismissed Count 2.  The Court determines, therefore, that a rational defendant would not have desired an appeal.  Accordingly, even if one accepts as true Mr. Peace's contention that his counsel failed to file an appeal after receiving such an instruction, counsel's performance was not deficient.

Furthermore, Mr. Peace cannot establish prejudice. To show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely

appealed. Roe, 528 U.S. at 484. Mr. Peace cannot show any nonfrivolous grounds for appeal. Mr. Peace's claim is, therefore, without merit.

### B. Whether Counsel was Ineffective for Failing to File a Motion to Suppress

Mr. Peace argues that his counsel was ineffective because he failed to seek suppression of statements that Petitioner made in an interview with law enforcement, after allegedly being promised that the statements would not be used against him. Mr. Peace argues that because he was not given a proper Miranda warning, his Fourth and Fifth Amendment rights were violated..

Certain claims are generally not cognizable in a 2255 motion. Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) ("claims that could have been raised on direct appeal, but were not, will not be entertained *via* a motion under Sec. 2255"). There are, however, two exceptions. "A petitioner can overcome the procedural bar if he shows (1) cause and actual prejudice to excuse his failure to raise the claims previously; or that he 'is actually innocent' of the crime." Id. (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)) (internal citations omitted). Mr. Peace does not assert that he is actually innocent of the crimes for which he pled guilty, but argues that his counsel's ineffectiveness led to the use of statements that he allegedly believed would not be used against him.

Typically, a review of the merits of Mr. Peace's Fourth and Fifth Amendment claim would be barred. But, because Mr. Peace alleges ineffective assistance of counsel on the basis of this claim, the Court must engage in an analysis of the merits. See Kimmelman v. Morrison, 477 U.S. 365, 382–83 (1986). When defense counsel's "failure to litigate a Fourth Amendment claim completely is the principal allegation of

7

ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Id. at 375.

Petitioner argues that during his interview with the DEA agents, they failed to give him Miranda warnings. He also argues that he was given immunity during the interview and that the statements he made were knowingly false. The Court will first address Mr. Peace's Miranda claim.

In order for statements made during custody to be admissible, an individual must be informed of his right against self-incrimination. See Miranda v. Arizona, 384 U.S. 436 (1966). For Miranda to apply, the individual must be in custody. "'Custody' is a legal term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Field, 132 S. Ct. 1181 (2012) (internal citations omitted). In his written plea agreement, Mr. Peace agreed that he voluntarily spoke to DEA agents at their office and that, during the interview with the DEA agents, he was advised that he was free to leave at any time and that he was not under arrest." Doc. 30 at PageID#: 119 ¶¶ 20B-20C. Petitioner has alleged no facts to support his argument that his interview with the DEA was custodial in nature. Miranda protections, therefore, do not attach. See United States v. Salvo, 133 F.3d 943 (6th Cir. 1998) (holding that when a federal agent advises a person of the noncustodial nature of the interview, and the circumstances of the interview are not contested, that person is not in custody for purposes of Miranda and Fifth Amendment protections). Similarly, Petitioner has alleged no facts to support his allegation that he was promised immunity,

8

an argument in direct tension with the record, including his sworn statements at his plea hearing.

Petitioner also argues that the statements he made to the DEA agents were untrue. He now wishes to retract those statements, despite attesting to their veracity. During his plea colloquy, Mr. Peace made the following representations:

> THE COURT: Do you understand the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: And are you aware of the facts that you're being asked to admit to?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And do you understand that you're waiving your rights to remain silent and not to incriminate yourself?
> THE DEFENDANT: Yes.
> THE COURT: So I ask you then, Mr. Peace, do you admit each and every fact as set forth in the factual basis and relevant conduct portion of the plea agreement [ ... ]?
> THE DEFENDANT: Yes, Your Honor.

Doc. 24 PageID#: 98-99. In the Plea Agreement, Mr. Peace agreed that the facts "fairly and accurately set forth Defendant's offense conduct and a factual basis for the guilty plea." Doc. 30 at PageID#: 119 ¶ 20. The Court will not now second-guess the veracity of Mr. Peace's sworn statements when his most recent assertions are contradicted by the record.

Furthermore, a defendant cannot successfully attack a plea agreement merely on the basis that defendant or his counsel incorrectly assessed the legal or factual circumstances surrounding the case. Furthermore, Mr. Peace falls demonstrably short of showing "a reasonable probability" that he would have insisted on going to trial but for counsel's errors. Stewart, 232 F. App'x at 487. He only argues that counsel should have pressed for a more favorable plea. Mr. Peace received a sentence that was 46

9

months fewer than the low-end of the Sentencing Guideline range. Mr. Peace has failed to show ineffective assistance of counsel on this claim.

### C. Whether Counsel was Ineffective For Failing to Challenge Career Offender Status

Petitioner argues that his counsel was ineffective for failing to challenge his status as a career offender. He contends that counsel failed to investigate the prior convictions that confirmed his career offender status, but he fails to offer any further or detailed argument. Under United States Sentencing Guideline § 4B1.1:

> a defendant is a career offender if he is (1) at least eighteen years old at the time of the offense, (2) the instant offense is a felony conviction that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. The Guidelines define "controlled substance offense" as:
>
>> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.1. Mr. Peace was older than the age of eighteen when he committed the offense at issue. See Doc. 32 (verifying that Petitioner was 36 years old at the time of the crime). And, the felony for which Mr. Peace has pled guilty is a controlled substance offense. The first two requirements of U.S.S.G. § 4B1.1 have been met.

As the government correctly states, at most, Mr. Peace may be attacking the last requirement by attempting to argue that none of the prior controlled substance convictions resulted in a sentence of imprisonment that exceeded one year. The last requirement of U.S.S.G. § 4B1.1 mandates that the defendant have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."

10

U.S.S.G. § 4B1.1.  If the offense is "punishable by imprisonment for a term exceeding one year", it counts as a prior controlled substance offense under the advisory guidelines.  U.S.S.G. § 4B1.2(b).  The actual sentence imposed need not be one year.  The Sixth Circuit has stated that "it is *potential* exposure that determines whether a conviction qualifies as a prior felony conviction for career offender purposes." United States v. McGhee, 161 F. App'x 441, 449 (6th Cir. 2005) (emphasis added); see also United States v. Parson, 288 F.3d 818, 821 n.1 (6th Cir. 2002) (remarking that potential exposure to punishment of more than one year is the relevant inquiry).  The felonies that form the basis for the career offender status, however, must fall within the applicable time period.  "All sentences imposed within the ten years before the instant offense are counted."  Parson, 288 F.3d at 821 (citing U.S.S.G. § 4A1.2(e) to analyze the computation of career offender status for a defendant convicted under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii)).

The relevant date for the instant offense is 2005, the year Mr. Peace entered the drug conspiracy. Doc. 30 at PageID#: 119, ¶ 20 (C); 32; see United States v. Saikaly, 207 F.3d 363, 372 n. 10 (6th Cir. 2000) ("the guidelines provide that the term 'commencement of the instant offense' includes any relevant conduct.") (citing U.S.S.G. § 4A1.2 cmt. n. 8).  Accordingly, any sentence imposed within the 10-year period preceding 2005 may be included in the criminal history computation.

At least two of Mr. Peace's prior felony convictions constituted controlled substance offenses punishable by imprisonment for a term of at least one year and occurred within ten years of 2005.  Petitioner's 1999 felony conviction for preparation of cocaine for sale, a felony of the third degree, was punishable by a maximum term of 36

11

months under Ohio Rev. Code § 2929.14(A)(3)(b). Petitioner's 2006 felony conviction for trafficking in more than five but less than ten grams of cocaine, a felony of the fourth degree, was punishable by a maximum term of eighteen months under Ohio Rev. Code § 2929.14(A)(4). Accordingly, Mr. Peace's convictions were eligible for enhancing his criminal history category to a level VI as a career criminal, pursuant to U.S.S.G. § 4B1.1. Mr. Peace properly qualified as a career offender. Further, Mr. Peace entered into a voluntary plea agreement specifically stating that his sentence would be enhanced due to his eligible convictions. Therefore, Mr. Peace fails to show that counsel was ineffective for failing to challenge his career offender status.

### III.  Conclusion

The motion, together with the files and record in this case, "conclusively show that Defendant is entitled to no relief." 28 U.S.C. § 2255.  The Court concludes that no evidentiary hearing is needed because Mr. Peace's claims for relief are contradicted by the record.  *See* Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). Petitioner's § 2255 motion is therefore denied without the need for an evidentiary hearing.

IT IS SO ORDERED.

                                            /s/ Lesley Wells
                                        UNITED STATES DISTRICT JUDGE

Date:  23 July 2015