IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:11-CR-434 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | |
| | ) | |
| DWAYNE PEACE, | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTION FOR |
| Defendant. | ) | COMPASSIONATE RELEASE |

Now comes the United States of America, by and through the undersigned counsel and respectfully submits the following Response to Defendant's Motion for Compassionate Release. (R.52: Motion for Compassionate Release, PageID 266-270). For the reasons stated herein, the United States of America requests that this Court deny Defendant's Motion.

**I.      PROCEDURAL HISTORY**

On September 21, 2011, a grand jury for the Northern District of Ohio returned a two count indictment. Count one of the indictment charged the defendant with Conspiracy to Possess with Intent to Distribute and Distribution of five or more kilograms of Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and 846. Count two of the indictment charged the defendant with Intent to Distribute and Distribution of 28 grams or more of a mixture and substance containing a detectable amount of cocaine base (crack), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B). (R. 1: Indictment, PageID 1-2).

1

On October 16, 2012, Defendant pled guilty before a United States Magistrate Judge to count 1 of the indictment in the above-captioned case. (R. 15: Minutes of Criminal Proceedings, PageID 39-40). On October 16, 2012, this Court adopted the Magistrate Judge's Report and Recommendation and approved Defendant's guilty plea. (R. 17: Report & Recommendation, PageID 43-44).

On May 31, 2013, this Court sentenced Defendant to two hundred and sixteen months imprisonment on Count One of the indictment. (R. 35: Minutes of Criminal Proceeding, PageID 157-158). The Court further ordered that sentence to be followed by five years of supervised release. *Id*.

On April 24, 2020, Defendant, through counsel, filed Motion for Compassionate Release. (R.52: Motion for Compassionate Release, PageID 266-270). The motion is based upon concerns regarding the present COVID-19 pandemic.

## II. LAW AND ARGUMENT

### A. The Attorney General Has Directed BOP to Prioritize Transferring Inmates to Home Confinement In Appropriate Circumstances

In recent days, BOP has been granted wider authority to designate inmates for home confinement in cases where such transfer would be appropriate. On March 26, 2020, the Attorney General instructed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.[1] That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C.

---

[1] *See* memo at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

2

§ 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of April30, 2020, BOP has transferred 1,805 inmates to home confinement under this authority.[2] As of April 30, 2020, at USP Atlanta where defendant is housed, there have been only 7 reported cases of COVID amongst inmates and 6 among staff. There have been no COVID related deaths.

Based upon Defendant's motion, the undersigned counsel contacted BOP for USP Atlanta, GA, where Defendant is housed, to obtain information on Defendant's status in the home confinement assessment ordered by the Attorney General as described above. On April 27, 2020, BOP advised that Defendant likely would not be transferred to home confinement. This determination was based upon Defendant's criminal history, and his custody classification within BOP.

In addition, Defendant has been classified as "medium" under the BOP custody level designation, which is determined by an inmate's criminal history, offense of conviction, and

---

[2] Updated figure can be found at https://www.bop.gov/coronavirus/index.jsp.

3

institutional adjustment. While the government, for the reasons stated below, believes an evaluation of the merits of Defendant's motion is not appropriate at this time, the factors which likely preclude him from transfer to home confinement under the above BOP review would also mitigate against a motion for compassionate release.

### B. The Defendant May Not Present a Motion to This Court Until 30 Days After Making a Request to the Warden Asking That BOP Support a Motion for Compassionate Release

At this time, the Court lacks authority to act on Defendant's motion for compassionate release. The compassionate release statute requires that a request for release be presented first to the Bureau of Prisons for its consideration. 18 U.S.C. § 3582(c)(1)(A). Only after 30 days have passed since the receipt of such request by the warden, or the defendant has exhausted all administrative rights to appeal the Bureau's failure to move on the defendant's behalf, may a defendant move for compassionate release in court. That restriction is mandatory, and it continues to serve an important function during the present crisis. The government is very mindful of the concerns created by COVID-19, and BOP is making its best effort both to protect the inmate population and to address the unique circumstances of individual inmates.

The compassionate release statute provides, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A).

Contrary to Defendant's assertion, the requirement that a defendant either exhaust administrative appeals or wait 30 days after presenting a request to the warden before seeking judicial relief is mandatory and must be enforced by the Court. The Third Circuit recently confirmed: where 30 days have not passed following presentation of a request to a warden, the statute "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, -- F.3d --, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). The *Raia* court declined to remand the case to the trial court to consider the defendant's compassionate release motion, which was based upon COVID-19 concerns, as "any remand would be futile" because the defendant had not waited 30 days after submitting his request to BOP before filing his motion. *Id.*

In denying motion for compassionate release based upon COVID-19 concerns, this and other district courts in the Sixth Circuit have recently recognized the mandatory nature of the exhaustion requirement of § 3582(c)(1)(A). *See United States v. Frazier*, Case No. 5:19CR274, ECF at Doc. # 136, PageID 790-93, 793 (N.D. Ohio April 14, 2020) (noting that § 3582(c)(1)(A) "is unambiguous," and that "[t]o obtain relief under § 3582(c)(1)(A), Defendant must either exhaust his administrative remedies or wait until 30 days have elapsed without a BOP determination."); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. April 8, 2020) ("[E]ven if an exception to 18 U.S.C. § 3582(c)(1)(A)'s filing requirements for defendants is appropriate during the COVID-19 pandemic, the Court lacks authority to craft such an exception."); *United States v. Hofmeister*, No. CV 5:16-13-KKC, 2020 WL 1811365, at *1 (E.D. Ky. April 9, 2020) (The § 3582(c)(1)(A) "prerequisites are jurisdictional, however, meaning that this Court has no power to grant relief on a motion for compassionate release unless the prerequisites are met."). A defendant's status as potentially high-risk for COVID-19

infection does not alter the mandatory nature of the requirement. *See Alam*, 2020 WL 1703881, at *1 (64-year-old defendant with "diabetes, coronary artery disease, obesity, sleep apnea, hypertension, and many other ailments"); *Hofmeister*, 2020 WL 1811365, at *1 (68-year-old defendant).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (quoting 18 U.S.C. § 3582(b)). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010); s*ee, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotations omitted).

Section 3582(c) grants such authority, but only under limited circumstances. The statute provides that a court "may not modify a term of imprisonment once it has been imposed," except under three specific circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Given the plain language of the statute and its grant of authority that courts do not otherwise possess, the requirements for filing a sentence reduction motion -- including the exhaustion requirement -- are jurisdictional.[3] Section 3582(c) states that a "court may not modify a term of imprisonment" except in enumerated circumstances. 18 U.S.C. § 3582(c). The statute thus prescribes when a court has jurisdiction to hear a motion for relief which it otherwise lacks authority to consider. "Jurisdictional treatment of statutory time limits makes good sense. Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007). "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

The government recognizes that, in recent years, the Supreme Court has cautioned against imprecise use of the "jurisdictional" label, and explained that a statutory claim-processing rule, even if mandatory, is presumed to be nonjurisdictional absent a clear statement to the contrary. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848-50 (2019). A prescription is not jurisdictional merely because "it 'promotes important congressional objectives,'" *id*. at

---

[3] A number of courts have recognized that the prerequisites for relief under Section 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional. *See, e.g.*, *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *overruled on other grounds by United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010); *see also United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007) (canvassing history of judicial treatment of Rule 35 as jurisdictional and holding that Rule 35(a) and Section 3582(c)(1)(B) remain jurisdictional after *Bowles*). Other courts disagree. *See, e.g.*, *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013); *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015).

1851 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)), and courts should not deem rules jurisdictional that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Whether a requirement is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision. *Henderson*, 562 U.S. at 436. Here, the relevant factors indicate that § 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks jurisdiction to consider a motion for compassionate release where the defendant has failed to satisfy the exhaustion requirement of Section 3582(c)(1)(A).[4]

The government thus maintains that the time limitation in Section 3582(c)(1)(A) is jurisdictional, given that it stands as an exception to the historic and fundamental rule that courts may not revisit a final criminal judgment. Even if the exhaustion requirement of Section 3582(c)(1)(A) is not jurisdictional, however, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). The government raises the rule here, and it must be enforced.[5]

---

[4] Although this Response uses the term "exhaustion requirement," to be clear, an inmate need not "exhaust" administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden.

[5] Indeed, even those courts that have concluded that the requirements of Section 3582(c)(2) are not jurisdictional still enforce the statutory prerequisites to relief. *See, e.g.*, *Taylor*, 778 F.3d at 670 (recognizing that even if a court has the "power to adjudicate" a motion under Section 3582(c)(2), it may lack "authority to *grant* a motion . . . because the statutory criteria are not met") (emphasis in original).

Defendant also argues that the exhaustion requirement of Section 3582(c)(1)(A) may be excused by this Court as "futile" during the present pandemic. (R.52: Motion for Compassionate Release, PageID267). However, there is no "futility" exception, as the Supreme Court has made clear that courts have no authority to invent an exception to a statutory exhaustion requirement. Thus, in *United States v. Perez*, -- F. Supp. 3d --, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020), to which Defendant cites in his motion, the government believes that the court incorrectly excused exhaustion of a claim based on COVID-19 as "futile," relying only on *Washington*, 925 F.3d at 118, addressed only a judicially created exhaustion requirement.[6] Moreover, as a substantive matter, contrary to the *Perez* court's finding, a request in this context is not futile because, as explained further below, BOP fully considers requests for compassionate release. Indeed, BOP often concurs with such requests. During the period from the passage of the First Step Act on December 21, 2018, until mid-March 2020 (before the coronavirus crisis began), BOP consented to a reduction in sentence in 55 cases.

Based upon the above authority, the requirement of a 30-day period to afford BOP the initial review of the defendant's request therefore cannot be excused. While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. And

---

[6] To the extent *Perez* also suggests that *Mathews* supports an exception to the exhaustion requirement here, *see* 2020 WL 1546422, at *2 n.2, the *Perez* court is incorrect. As noted above, in *Mathews*, the claimant complied with the "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 16 (2000). Additionally, while the Court in *Mathews* recognized that a constitutional challenge "entirely collateral to [the claimant's] substantive claim of entitlement" might evade a statutory exhaustion requirement, 424 U.S. at 330, the defendant's claim for relief in this Court is the same claim he was required to present to BOP.

9

this is for good reason: the Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g).[7] As the Procedures reflect, the Bureau of Prisons completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

This remains true in the present crisis. The government does not underplay Defendant's concerns in any way. This Court, like all citizens, is acutely aware that COVID-19 is a serious illness, which has infected large numbers of people and caused many deaths in a short period of time. BOP has accordingly taken significant measures in an effort to protect the health of the inmates in its charge. BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2020, BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following: all incoming inmates are screened, and staff are regularly screened; contractor visits are limited to essential services, while nearly all attorney, social, and volunteer visits have been suspended; inmate movements between facilities have been extremely limited; and institutions are taking additional

---

[7] The full Program Statement for the Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) is available at: https://www.bop.gov/policy/progstat/5050_050_EN.pdf

steps to modify operations to maximize social distancing. BOP has taken further steps as events require, including confining all inmates to their living quarters for a 14-day period beginning on April 1, 2020, in order to mitigate any spread of the disease.[8]

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. It must also consider myriad other factors, including the availability of transportation for inmates (at a time when interstate transportation services often used by released inmates are providing reduced if any service), and the supervision of inmates once released (at a time when the Probation Office has necessarily cut back on home visits and supervision).

For all of these reasons, BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an

---

[8] Additional details of the measures taken by BOP are available at the agency's website. https://www.bop.gov/coronavirus/covid19_status.jsp

inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of Section 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time. As the Third Circuit stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 2020 WL 1647922, at *2. Thus, even if this Court could ignore the mandatory exhaustion requirement, which it cannot, it would be imprudent to excuse defendant's failure to wait 30 days after presenting a request to the warden before seeking judicial relief.

### C. Defendant Has Failed to Satisfy the Statutory Conditions for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)

After complying with the exhaustion requirement, a defendant must satisfy the following statutory conditions before a court can grant a compassionate release motion: (i) "extraordinary and compelling reasons" warrant the reduction; or (ii) the defendant has to be at least 70 years old, have served at least 30 years in prison, and the BOP Director must have determined the defendant was not a danger to the public. 18 U.S.C. § 3582(c)(1)(A). Reviewing courts also must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and can only grant reductions to defendants who meet the statutory requirements if the reduction was "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

To assist courts, the Sentencing Commission adopted U.S.S.G. § 1B1.13 as the applicable policy statement for motions filed by the BOP Director under § 3582(c)(1)(A). The guideline essentially repeats the statutory prerequisites and adds a requirement that the defendant must not

12

be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The application notes to § 1B1.13 are more specific. Application Note 1 lists three specific categories and examples of "extraordinary and compelling reasons" along with a fourth catch-all provision. Specifically, the notes discuss when a defendant's medical condition (subsection A), health and age together (subsection B), or family circumstances (subsection C) will qualify. U.S.S.G. § 1B1.13, App. n.1.

Subsection A provides that a "medical condition of the defendant" may qualify as an "extraordinary and compelling reason" justifying a sentence reduction in several different circumstances, including if the defendant has a "terminal illness" or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care." *Id*. at n. 1(A)(i). Subsection B provides that a reduction may be justified where the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. at n. 1(B). While Subsection D acknowledges that there may be other situations which constitute extraordinary and compelling reasons and provides a non-specific blanket authorization for early release, that provision allows compassionate release if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" previously enumerated. *Id*. at n. 1(D).

Defendant does not meet the criteria for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(ii)—he is not 70 years old and has not served 30 years in prison. He likewise cannot establish "extraordinary and compelling circumstances" under 18 U.S.C.

§ 3582(c)(1)(A)(i). The government acknowledges that COVID-19 may affect whether an inmate can show an "extraordinary and compelling reason" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i)—but only to the extent that (1) the inmate has a condition or characteristic that is a cognizable basis for compassionate release under the current criteria (e.g., a serious medical condition, debilitating condition, elderly offender with medical conditions, etc.) and that condition or characteristic also elevates the inmate's risk of becoming seriously ill from COVID-19 under relevant CDC guidelines, and (2) the inmate is more likely to contract COVID-19 in his or her particular institution than if released.

Defendant has not established a substantiated "medical condition" of the type and gravity sufficient to justify release consistent with Subsections A and B of the Guidelines commentary. While Defendant alleges that he has an acute form of asthma, he has not provided any supporting medical records or otherwise indicated that the BOP cannot accommodate his unique medical needs. The Presentence Investigation Report (PSR) completed prior to Defendant's sentencing lists medical conditions, but no serious or debilitating illnesses. (R32: Presentence Investigation Report, PageID 127-149). Moreover, Defendant is not 65 years old and has not served over 10 years or 75% of his sentence. To the contrary, Defendant is 45 years old and has served half of his sentence. Defendant bears the burden of proving that compassionate release is warranted, *see United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013), but has not established "extraordinary and compelling circumstances" justifying compassionate release. Accordingly, even if his failure to exhaust administrative remedies is excused and his motion is considered on the merits, it should be denied.

14

## CONCLUSION

For the foregoing reasons, the United States asks that this Court deny Defendant's Motion for Compassionate Release.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   /s/ Michelle M. Baeppler
        Michelle M. Baeppler (0065378)
        Assistant U.S. Attorney
        208 Seiberling Federal Courthouse
        Two South Main Street
        Akron, Ohio 44308
        (330) 761-0519
        (330) 375-5492 (facsimile)
        Michelle.Baeppler@usdoj.gov